Catron, Ch. J.
delivered the opinion of the court.
By the court law of 1794, sec. 26, it is provided, that “for the better preservation of the records of the court, when any cause is finally determined, the clerk of each court shall enter the proceedings therein, in a well bound book, and an entire and perfect record make thereof.” This act applied to causes at law. By the act of 1809, ch. 49, sec. 4, it was extended to the circuit courts. The practice of recording proceedings at law was followed by the clerks of the superior courts; the fee bill allowed for the service of recording the pleadings and judgment, but not for the bill of exceptions. Some years since, it was decided by this court at Jackson, that the clerks of the supreme courts were entitled to the same fees by the act of 1825, that the clerks of the circuit courts were entitled to, the latter being entitled to fees by the copy-sheet as well *534 as the former. This recording after judgment, proved a vel'Y useless expense, and serious grievance to suitors. An appeal in error was prosecuted, the judgment rendered below reversed, the cause remanded, tried again, a second appeal in error prosecuted, and the cause finally ended in the supreme court. The consequence was, that the cause was four times recorded; twice in the circuit court, and twice in the supreme court. To remedy this evil, the legislature passed the act of 1831, ch. 14, declaring all laws requiring the clerks of the supreme courts “to record all causes in a book to he by them kept, or receive any fees therefor,” should be and stand repealed. It is insisted the act. of 1831 applies to all causes in the supreme court, as well those at law as in equity. The act tells us that great uncertainty existed as to the taxation of costs in the supreme court, for remedy whereof it was enacted. No uncertainty existed as to taxing costs in equity, but at law there certainly had been great uncertainty. The act was passed on the 17th December last. On the 20th, the law was passed regulating the fees of the clerks and masters in equity. This act allows the clerks, for enrolling bills and answers by the copy sheet, eighteen cents; and by the third section, the same fees are allowed to the clerks of the supreme court.
That the legislature intended to repeal the standing law of thirty years, which first declared proceedings in equity to be records, after being enrolled, we cannot bring ourselves to believe. The 42d, 43d, 44th, and 45th sections of the act of 1801, ordered the bill, answers, replications, pleas, demurrers, issues of fact, verdicts thereon, and decrees, to be recorded together, and to make up the record of the cause. By the 48th section, the court is given the power to divest titles to lands, instead of compelling defendants to convey; a power for the first time vested in a court of equity, most convenient in its application, and extensively ex *535 ercised. To vest the title, a copy of the decree from the record must be certified by the clerk, and registered in the county where the land lies. By the 75th rule governing the court, and which has been practis-ed upon for more than ten years, the bills, answers, and pleadings in chancery, shall, for all purposes, be considered parts of the record, and as prefixed to the decree; and in drawing decrees, it shall not be necessary to recite the bill, answers, and other pleadings, or the substance of them, but only the facts as they appear proved to the court, and the decretal orders. In 1825, two rules passed by this court (in January of that year) were repealed, the others recognized as binding, and the court prohibited from making any new ones, except by the assent of the legislature. No rules have since been published. The 75th rule was adopted, because the pleadings were recorded with the decree. If the act of 1831 applies to chancery causes pending in the supreme court, it of course repeals the rule. The chancery proceedings merely filed in the office, are no longer records, nor could they be certified as such by the clerk and master. Before the passage of the act of 1801, we were governed by the English rules in Chancery, almost exclusively, and our equity proceedings had the force and effect of proceedings in the English court. This was not the effect of a record. If it were desired to prove a proceeding, or any part thereof, a sworn office copy could alone be given in evidence. This the act of 1801 altered. Did the act of 1831 intend to repeal it, and the rules and. practice grounded on it, for thirty years? As above remarked, we cannot bring ourselves to believe so. What would be the consequence? There are original causes in this court, transferred because of the incompetency of the chancellors to hear them. Of these, no record evidence would remain any where; and it cannot be doubted the legislature did not intend to extend the *536 provisions of the act of 1831 to said causes, because of their original character m this court. JNor was there any better reason in fact, for declaring appeals should not be recorded. The decree, generally, in some re. spects altered, often reversed and entirely changed, giving the cause an effect only to be learned in this court. A bill is dismissed below, but on appeal sustained, and an account ordered here, in the taking of which the whole evidence is heard, and almost the entire substance of the cause appears on the records of this court. The theory of this being a mere court of errors and appeals in chancery causes, is greatly at war with the practice. .Often it is compelled to exercise most extensive original jurisdiction, to afford the relief the court below ought to have given. When the cause once reaches this court by appeal, then we are bound by the act of 1809, ch. 31, to hear it upon the whole matters of law and fact, in the same way and under the same rules, regulations and restrictions, as causes originally commenced in the supreme court, (when it had original equity jurisdiction,) were heard, and determined; and by the act of 1809, ch. 49, sec. 27, we arc bound to render such decree as the court below ought to have rendered. It is therefore most necessary that this court, on the equity side thereof, should be a court of record. In cases of appeals it would generally matter much less, were they not recorded below, because not final there; but where they are finally decided, there they certainly should be recorded. If nothing is.to be enrolled in this court, either pending here on original bill or otherwise, it is difficult to perceive on what an injured party is to ground his bill of review; which an adult person has a right to within three years next after the pronouncing such decree, and infants, femes covert, and others, for three years after the disability is removed, by the act of 1801, section 53. We, therefore, refuse the motion. If the court has mis *537 taken the intention of the legislature, the mistake can he corrected hy the same assembly who passed the act at the session shortly to take place, pursuant to the call of the executive.
Motion overruled.